United States v. 4219 University Drive Thank you, Your Honor Mr. Jakubowicz May it please the Court, my name is Jeffrey Jakubowicz and I represent the appellants who are the claimants Turan and Duygu Kivac The appellants bought real property at 4219 University Drive in Fairfax, Virginia from their son, Dr. Mert Kivac They had originally sold the house to their son a couple of years before that In fact, their kids had grown up in that house They had held it for a lengthy period of time The original transaction took place in September of 2005 The claimants then bought the house back from their son in 2007 at the same price they had originally sold it for, $625,000 Claimants then moved back into the house Dr. Mert Kivac, and I'll refer to him as Mert during the argument was under investigation and ultimately indicted in 2011 for health care fraud He is a rheumatologist who completed his residency at Georgetown University The investigation of Mert Kivac started in 2004 The government did not attempt to arrest Mert until 2010 three years after the house had been sold and he was not indicted for money laundering In fact, he was not indicted for health care fraud until April of 2011 The government thereafter sought civil forfeiture of the house and a PNC bank account Thus, the Kivacs had their property for approximately four years before the forfeiture case had started They could have sold that property at any time during that four-year period In February of 2012, the jury entered a verdict in favor of the government Claimants will begin by addressing two issues in this oral argument First, the statute of limitations and second, the denial of remote testimony In that factual recitation that you gave Is it relevant to point out that during this process Dr. Mert poured quite a bit of money into this house in terms of the renovations that were done and the mortgages on it and things of that nature He did put money into the house, Your Honor, but It wasn't just a little money. It was quite a bit of money, wasn't it? Well, that's right, but we don't know the origins of that money At that point, he had been living in the house That's where he had owned the house His parents then bought it back from him and moved in You said it came from a certain account It did come from an account, Your Honor And the government... Was it an account in which he was putting monies in from his business? He was, Your Honor, and there was an initial investigation of Mert Kivac which the government has tried to bifurcate An initial over-billing investigation which we claim is still part of the healthcare fraud investigation And it's not clear where that money went into and which account that money went into And so there was money commingled in that account and there were checks written to the construction company that said that the money was being paid for rebuilding the house or construction on the house But when the parents ultimately bought the house and moved back in, the house was a complete house in perfect condition And in any event, they did purchase the house They paid $625,000 to their son Mert And in fact, there's no evidence... In the statute of limitations, don't you have a factual finding here on the part of the district court? Well, Your Honor, it's our contention And we differ with the government on that issue that it's actually a de novo review by this court that it's a motion to dismiss under 12b-6 But you have a fact finding, do you not, that the discovery occurred in October 2006? That's correct And not April of 05 The basis of the fact finding was, of course, that the overprescription for patients and the Remicade fraud were very different things And that we're talking about five years after discovery and the discovery of the overbilling for Remicade didn't occur until 2006 Not April of 05 That would have brought it within the statute of limitations And you're trying to date the day of discovery to the Maxwell allegations But the Maxwell allegations didn't have anything to do with the Remicade overbillings, as I understand it Your Honor, the government admitted in their interrogatories that their discovery of healthcare fraud began in April of 2005 But they're different forms of healthcare fraud The Maxwell allegations did not concern overbilling for Remicade treatments that were never administered Your Honor Isn't that correct? Didn't the Maxwell allegations have to do with overprescription of narcotics rather than billing for Remicade? Didn't Judge O'Grady make a finding to that effect? He did, but Your Honor, we disagree with that finding because overbilling is overbilling And a healthcare fraud statute doesn't differentiate between Remicade healthcare fraud and overbilling for prescriptions And in fact, Agent Weta testified, he's the case agent He testified at his deposition that the overbilling on prescriptions could be healthcare fraud And so they were aware of healthcare fraud prior to 2006 In any event, we filed a motion to strike And the claim basis for the forfeiture action was healthcare fraud and money laundering both allegedly committed by the son, Mert And by the way, nobody was ever indicted for money laundering The doctor was not indicted for money laundering And the testimony, both at depositions and trial were that the parents, who we claimed were innocent bona fide purchasers, never knew about any kind of money laundering and never participated in any money laundering And that was both testimony from Agent Weta and Agent Sears who testified, the accountant Even if we took your view of the healthcare fraud Isn't there, isn't each instance of healthcare fraud a part of a continuing course of conduct? Your Honor, we would disagree with that Because if that's the situation then any time there is a healthcare fraud committed it would circumvent The Seventh Circuit held as much If you're talking about, are you talking about the Suffield Place case? Yeah, I'm talking about Suffield Well, in Suffield, Your Honor Court's indulgence There were two cases cited by the government Smith, which I personally know something about and Suffield And in Suffield, that involved two separate cases of smuggling Your Honor, there were specifically separate cases of smuggling Here there's one healthcare fraud scheme And the operative date was the date that the government discovered the underlying But look, you know, you can have Alright, let's say, you know, you have the the Remicade fraud on the one hand and then you have the overprescription of patients on the other But, you know, it's a civil forfeiture case and the complaint was filed and the whole healthcare fraud which was alleged by Maxwell which concerned the overprescription was never once mentioned in the civil complaint But what was mentioned in the civil complaint were discoveries that were made in October of 2006 And that formed the basis of the civil complaint And the government is not obliged to take the instances of healthcare fraud that you think it should take If there's a more recent example of healthcare fraud and there certainly is in terms of overbilling patients for Remicade And you have done that within the five year statute of limitations The government is perfectly entitled to include those instances in its forfeiture action And what you're trying to tell us is that the government is restricted in terms of its civil complaint only to the instances of healthcare fraud that fall that arguably fall outside of the statute of limitations And I haven't heard that theory before Your Honor, the overbilling This is odd because what you'd be able to do is anybody who wanted to healthcare fraud would keep on doing it and doing it and doing it and then say no but because I committed this one instance of healthcare fraud that was outside the limitations period I'm home free You know, that just can't be Your Honor that home free act that you're talking about was referred to during the trial on three or four occasions It was referred to and we pointed it out in our brief Moreover, the government cannot just pick and choose what they want to under the statute because under that theory It's taking an act of healthcare fraud that was well within the statute of limitations But then they're picking and choosing that act and under your theory then the statute would never start running No, it Oh yes It starts running when you stop committing healthcare fraud That's when it starts running as long as you you know the statute is told as long as you commit instance after instance after instance of fraud Well You can start the statute running very well by releasing the unlawful activity Your Honor, let me move on if possible to remote testimony because my time is is running here but we respectfully disagree with the court's position because I understand I don't expect any good criminal defense attorney and you're certainly one  for saying that this is not a question of fact? Well, we have Yes, we cited cases in our brief that it's that it's a 12B6 motion In fact, I believe the Suffield case was reviewed Right under de novo standard The date of the discovery Excuse me? The date of the discovery is not a question of fact? Well, we cited the Sixth Circuit case Oh well You mean in terms of the review? The standard of review? The Sixth Circuit is not in favor Yeah I mean the Sixth Circuit very clearly said An offense is the statute of limitations is a question of fact Let me see where they said that It was the the 515,000 That's right which came out as saying the the government had violated the statute of limitations Right, but they did it a clear error analysis  They did it a different error different analysis than Suffield-Terrace That's correct, Your Honor There appears to be a split on that in terms of what the standard of review should be Well, why doesn't this make more sense the Sixth Circuit's position because we're talking about a determination of when something was discovered Isn't that necessarily factual in nature? Well, Your Honor 12B6 motions have historically I believe been looked at under de novo standard This is an affirmative defense and an affirmative defense that's raised in the 12B6 context and we would contend that that it really is a de novo review I mean, when a court finds when a court analyzes summary judgment and summary judgment involves certain fact elements that the court has to make a finding on I haven't even heard you review It's still reviewed de novo I mean, I haven't really heard you dispute this The only way you You don't dispute that a discovery of Remicade fraud occurred in 2006 You just All you say is that Well, we dispute that The discovery of something else occurred in April 2005 No, no, we dispute the The Remicade was discovered early in that We have testimony by Agent Weider that it was discovered that the health care fraud began in April of 2005 So what you're saying really is you're not relying on any particular fact You're making a legal argument that the government can't piggyback That's correct That's correct, Your Honor With respect to the remote testimony denial of the remote testimony We filed a motion to allow Teran Kavanch to testify remotely He's in his 80s, Your Honor And he was a distinguished diplomat at the United Nations He was on the executive board of the World Bank and the IMF His background information was kept from the jury  The court was upholding the magistrate's position We, in fact, submitted his treating physician's report and then a supplemental report indicating that he could not travel and he could testify contemporaneously but he could not travel to the States The magistrate held that she, in fact, had And let me say the treating physician's report indicated three or four different series Were you talking about the son or the parents? The parents Well, it relates to the son as well because we also tried to have the son testify remotely and that's a different story but it's an overall lack of due process and fairness The district court The federal rules really frown on remote testimony I mean, they don't like it Well, there is a trend and, in fact, if you look at the notes attached to Rule 43 the advisory notes it indicates that illness is one of the factors that a court has to consider The problem there is that you had a finding of fact by the district court that there was no health impediment to this particular testimony and the cases that have found illness as a reason for not traveling have had far more compelling adverse health circumstances than was here But, you know, I think the federal rules, you know, they say the importance of presenting live testimony in court cannot be forgotten and you are the claimants here and it really is an what it was an unrealistic to expect the folks who, you know, are the claimants to appear in person if it's at all possible to support their claim I mean, I would think but, of course, at least in the case of the son he's been convicted He hasn't been convicted, he's been indicted He's been indicted and he wants to remain in Turkey to avoid prosecution for his indictment and he's for some reason a fugitive He can't be extradited But, you know, this is an evidentiary question The district court is in a better position to assess this kind of thing and whether somebody can travel The district court is within its rights to say, I want live testimony especially when somebody's claiming this very expensive home I think that the person who could best assess it would be the treating physician and that's what case law has held which we cited to the court and here's a situation where he had prostate cancer he had hypertensive emergencies multiple kidney stones he had fainting spells Those are pretty serious illnesses where over an 80-year-old gentleman would get on a plane and travel from Turkey to the United States whereas he could testify remotely by video which has been the trend in courts It's not allowed in criminal cases It's certainly allowed in civil cases and the courts have held that people can testify in that manner and we made him available for an informal deposition in Turkey The government said no, they wouldn't do it The government did not try to take his formal deposition at The Hague and so we were just trying to get his testimony in The two people who knew most about the transaction were him and his son His son's remote testimony was disallowed putting aside that he's under indictment here but what I'm saying is we tried to get evidence before the jury In fact, the judge during the case said I know I made it difficult on you, Mr. Jakobovits because I haven't let your witnesses testify and so it made for a hearing that really lacked in due process and fundamental fairness All right, thank you, sir Thank you Ms. Taylor Please, the court, I'm Karen Taylor and along with Brian Harrison, who's at council table we represent the United States Beginning first with the statute of limitations issue Judge O'Grady was not clearly erroneous in determining that the discovery of the health care fraud which underlies the civil forfeiture complaint and which the evidence at trial focused on was the Remicade fraud scheme which was discovered, as Judge O'Grady found, in October of 2006 Although the government was aware of an allegation of a general claim of health care fraud earlier it had nothing to do with the Remicade fraud scheme that underlies this case And I might point out, Your Honors, that this case was based on a continuing course of conduct a continuing course of health care fraud It was outlined in the complaint It was discussed and presented at trial It was a two-year period of time that the government focused on and is allowed to focus on And that period was November 1st, 2005 through October 31st of 2007 So, on its face, clearly the government did not violate the statute of limitations in bringing this case because the complaint was filed less than five years after that continuing course of conduct, you know, occurred It was 2011 we filed the complaint, June So, clearly, under any set of facts you look at here the government was well within its rights to bring this silver forfeiture case and it did not violate the statute of limitations Judge O'Grady was correct in his analysis Turning now to the... How long was the jury trial in this matter? It's about three and a half days, Your Honor Three and a half days In February of last year Yes, Your Honor Turning now to the question of the remote testimony and whether or not Judge O'Grady abused his discretion in denying that request He did not abuse his discretion The rule, Rule 43A, says that only in compelling circumstances with appropriate safeguards should someone be allowed to testify remotely And as the court recognizes this was the claimant that wanted to testify remotely His credibility was a key issue here to allow him to testify over in Turkey Well, I think the claimant is a non-starter for the other side I mean, he's hiding out from indictment I know But what about... No, the claimant was... Oh, the claimant was the father The father I got confused Yeah, what about the father? I know we shouldn't be micromanaging the district courts I know that's a problem if we start saying who can come and who's sick and who's not sick But he's saying that there was a large... I mean, there was a large body of medical evidence in terms of problems that this older man had What would have been the harm? You're just saying Judge could have allowed it but bottom line is there's no abuse of discretion? Actually, I think he would have abused his discretion if he had allowed it because the circumstances were not compelling because as Dr. Ponce said in his letter he could have drank water for his kidney stones there are wheelchairs in airports he wouldn't have to worry about fainting There really were not compelling circumstances here and I think it's important to remember that with that rule credibility is also a factor and we have someone who wanted to testify remotely who had submitted three different affidavits saying three different things about how he supposedly paid $625,000 to his son You're saying that's an appropriate consideration for the court? Yes, it was an appropriate consideration because... Okay, thanks All right So, going to the next issue which was the remote testimony of the son which was really... as Judge O'Grady pointed out if he would have allowed that it really would have made a mockery of the American justice system I think you can skip that one Okay All right, I will... Are there any further things you have because we've got these in your brief and those were the two issues that your opposing counsel brought up and you've responded If the court is satisfied I will... We have no further questions Okay, I urge the court to affirm this case Thank you for your attention Yes, sir, you have a rebuttal time here Just a brief rebuttal In terms of questions and argument raised we do believe we raise compelling circumstances for the father to testify remotely And the reason we brought up the remote testimony of the son who's the doctor who, by the way, is not convicted and plenty of people go to trial in criminal cases and are acquitted and he raised meritorious defenses in a letter to his attorney in affidavits that we weren't allowed to put in front of the jury but it's in the record How can you say that somebody who's avoiding indictment... Well, when he left the country it was four years or three or four years before he was indicted and he allegedly left to do his military service in Turkey He had lived here all his life but he also had Turkish residence Turkish citizenship and he left at that point He was not under indictment He was free to leave He wasn't fleeing He was free to leave And he just hasn't come back putting aside the fact that he was indicted But if you put that together with the fact that his father wasn't allowed to testify critical facts were withheld from the jury And the father... All of the cases have said that where remote testimony is on the part of a party and here it is the central part of the claimant that it's particularly the quote is it's particularly detrimental where it is a party to the case who wants to participate by videoconference and his personal impression is a critical factor in persuasion I'm sorry That's the... That's the thing This is not... Someone whose credibility personal credibility is absolutely crucial to the case But the courts the Fourth Circuit's allowed videoconferencing in immigration deportation proceedings where the person is about to be deported An immigrant who's being deported What can be more valuable than that in terms of live testimony versus video testimony and the court allows it because video testimony these days in terms of the trend is just as... is the equal of live testimony And we were willing to put it forward and the government could have taken his deposition and could have avoided this whole problem and they just didn't do it And what they were trying to do was prevent his testimony from coming before the jury In terms of there being no harm that the government has... or excuse me that Judge Keenan had mentioned there is significant harm here because the harm is of the claimants not being able to put forward their defense of being innocent bona fide purchases of the property There was no evidence put forward by the government that they were aware of healthcare fraud or they were aware of any money laundering The burden shifts to the claimants to show that they are innocent bona fide purchases which they would have put forward and been able to put forward had they been able to testify but they weren't able to testify You know, this is a matter it's an evidentiary matter it's right at the very heart of the district court's evidentiary discretion He's in a much better position to evaluate the health situation and the severity of it and the medical testimony than are we And it wasn't... I could be wrong when the federal rules say there have to be compelling circumstances to go without live testimony and that live testimony is definitively favored I mean, the federal rules that presumption overcome only through compelling circumstances But where's the harm here? Where's the harm if he testified he's subject to cross-examination the jury sees him on video they could assess his credibility in terms of the affidavits that the government just raised The judge didn't take into account anything related to affidavits that were filed in the case The judge looked at the hired gun doctor hired by the government to file an expert report to essentially convince the court that the treating physicians analysis was wrong But we cited cases to the court where treating physicians should be held to a higher degree than a hired expert by the government Well, there are two things about that One, treating physicians are treating physicians and they're certainly deserving of respect in that way but treating physicians also give testimony that is highly to their client's advantage and it's up to a district court to assess the advantage and perspective that a treating physician has versus the fact that they do tend to give testimony that is highly advantageous to the position of the person whom they treat and it's a balancing act as to the weight to be accorded that kind of thing and, you know, it's we've talked a lot about advantages of district courts in assessing testimony in trial in trial management Well, Your Honor it's an overall picture and I'll summarize but it's an overall picture of the fact that the claimants weren't allowed to have their theory of the case instruction read by the court the fundamental unfairness of the remote testimony being denied the summary judgment excuse me, the statute of limitations argument being denied we contend that this was an unfair proceeding the claimants were denied due process the judge even acknowledged that they didn't allow my witnesses to testify the claimants to testify we don't know whether the deposits that Judge Winn alluded to previously in terms of that form the basis of the construction whether they were from the insurance overbilling or whether they were from the Remicade overbilling the special verdict form did not differentiate between overbilling on prescription drugs and Remicade even though overbilling had been referred to three or four times during the trial one thing I would mention to you is you don't waive any of those arguments you have all the arguments that you a lot of times people can't get all the arguments that they raise in a brief and oral argument but those aren't waived thank you, your honor you have one final in any event we would ask that the jury verdict be reversed and the case dismissed all right, we thank you we will adjourn court
judges: J. Harvie Wilkinson III, Barbara Milano Keenan, James A. Wynn, Jr.